UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAULIA AZUCENA ALVAREZ RODRIGUEZ,<br><br>        Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>        Respondents. | Case No.: 25cv3799-LL-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>[ECF Nos. 1, 9] |

Before the Court are Petitioner Braulia Azucena Alvarez Rodriguez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")] and Motion for Temporary Restraining Order [ECF No. 9 ("TRO")]. Also before the Court are Respondents' Return in Opposition to the Habeas Petition [ ECF No. 11 ("Ret.")] and Petitioner's Traverse [ECF No. 12 "Traverse"]. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus, **DENIES AS MOOT** the Motion for Temporary Restraining Order, and **ORDERS** Petitioner's immediate release from custody.

I. BACKGROUND

Petitioner is a citizen and national of Guatemala. Pet. at 17 [Declaration of Braulia Azucena Alvarez Rodriguez ("Alvarez Decl.") ¶ 1]. Petitioner initially entered the United

States in June 2005 but was apprehended, placed in expedited removal proceedings, and removed to Guatemala. ECF No. 11-1 [Declaration of Ramon Meraz[1] ("Meraz Decl.") ¶ 4]. Petitioner returned to the United States in 2007 after she was "kidnapped, gang raped, shot [nine] times and suffered the murder of [her] teenage son execution style by the MS-13 and policemen in Guatemala." Alvarez Decl. ¶ 2. In September 2011, Petitioner was apprehended and was subject to reinstatement of her prior removal order as a noncitizen who had been ordered removed and thereafter re-entered without being admitted or paroled. Meraz Decl. ¶ 5. In January 2012, Petitioner was released from custody on an order of supervision. *Id.* ¶ 7. On February 27, 2014, an immigration judge granted Petitioner withholding of removal to Guatemala under the Convention Against Torture. Alvarez Decl. ¶ 4; Meraz Decl. ¶ 10. Since 2012, Petitioner never missed a check-in appointment with Immigration and Customs Enforcement ("ICE"). Alvarez Decl. ¶ 5. On July 23, 2018, Petitioner applied for a U Nonimmigrant Status ("U-visa"),[2] and on April 7, 2025, Petitioner was granted deferred action by the United States Citizenship and Immigration Service ("USCIS") pursuant to her U-visa petition. Alvarez Decl. ¶¶ 7–8. On December 18, 2025, ICE re-detained Petitioner at her check-in. Alvarez Decl. ¶ 11; Meraz Decl. ¶ 11. Respondents served Petitioner with a "Form I-200, Warrant for Arrest of

---

[1] Mr. Meraz is a Deportation Officer employed by the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO). Meraz Decl. ¶ 1.

[2] A U-visa provides temporary legal status to victims of qualifying criminal activity who have suffered substantial physical or mental abuse and who cooperate with law enforcement in investigating or prosecuting those crimes. *See* 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p); 8 C.F.R. § 214.14(b). The filing of a U-visa petition "has no effect on the authority of [ICE] to execute a final order" of removal, but a petitioner who is subject to a final order may seek a stay of removal pending the completion of the U-visa process. 8 C.F.R. § 214.14(c)(1)(ii). The number of U-visas available is statutorily capped at 10,000 per year. 8 U.S.C. § 1184(p)(2).

[Noncitizen]" but "was not provided a notice of revocation of release or an informal interview." Meraz Decl. ¶ 11.

On January 8, 2026, Petitioner was served with a "Notice of Third Country Removal to Mexico." Meraz Decl. ¶ 14. Mexico has agreed to accept citizens from Guatemala and "schedules the removals a few times a week." *Id*. ¶ 15. Respondents believe that it could take a week or less to effectuate Petitioner's removal to Mexico. *Id*. ¶ 16. However, Petitioner's name has not been submitted to Mexico for removal yet because of this Court's order that Petitioner not be removed from the district pending further order. *Id* ¶ 17.

Petitioner has four children who are United States citizens and one who is a permanent resident. Alvarez Decl. ¶ 12. Petitioner has diabetes, anxiety disorder, and depression but alleges that she is not receiving the necessary medical treatments in detention. *Id*. ¶¶ 15–16.

## II.     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas

challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

### III. DISCUSSION

Petitioner argues that (1) ICE failed to comply with its own regulations before re-detaining Petitioner, violating her due process rights under the Fifth Amendment and 8 C.F.R. § 241.4(l) and § 241.13(i); (2) ICE may not remove Petitioner to a third country without adequate process; (3) ICE may not remove Petitioner as she has deferred action granted by USCIS for her U-visa. Pet. at 7–14. Respondents respond that (1) Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and § 1252(f)(2); (2) Petitioner's complaints about procedural deficiencies in her re-detention do not establish a basis for habeas relief; (3) Petitioner's claim that she may not be removed to a third country without adequate notice and opportunity to be heard is moot because she has received written notice; (4) "a grant of deferred action does not prevent DHS from detaining Petitioner, terminating the deferred action, or executing her final removal order." Ret. 3–14.

**A. Jurisdiction**

Respondents first argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g). Ret. at 3–7. The Court disagrees. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims "arise 'from the decision or action by the Attorney General to . . . execute removal orders,' over which Congress has explicitly foreclosed district court jurisdiction." Ret. at 6. However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) ("The

Supreme Court has instructed that we should read § 1252(g) narrowly."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (noting that courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

In fact, the Supreme Court has previously rejected as "implausible" Respondents' suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citing *Reno.*, 525 U.S. at 482.) In other words, §1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997. Specifically, §1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). "[The petitioner's] objective was not to obtain judicial review of the merits of their [] proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

Here, Petitioner is not challenging the legitimacy of her removal order. Rather, Petitioner is enforcing her constitutional rights for due process. Accordingly, this Court has jurisdiction to consider Petitioner's due process claims.[3]

/ / /

/ / /

---

[3] At this time, the Court finds that it does not have jurisdiction to consider Petitioner's third claim that ICE may not remove her based on the grant of deferred action under her U-visa. Respondents cite to § 1252(f)(2), which provides that "no court shall enjoin the removal of any [noncitizen] pursuant to a final order under this section unless the [noncitizen] shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law. Because Petitioner has not shown by clear and convincing evidence that a grant of deferred action stays her removal process, this Court does not have jurisdiction to hear this claim.

### B. Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### 1. Agency Regulations

Petitioner challenges her detention as unlawful because ICE failed to provide the required notice and opportunity to be heard before re-detaining her, in violation of the Fifth Amendment and 8 C.F.R. § 241.4 and § 241.13. Pet. at 7–10. The Court agrees.

The detention and release of noncitizens that are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the 90-day removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (citation omitted). Code of Federal Regulations sections 241.4 and 241.13 govern the release and the revocation of such release of noncitizens who are subject to a final removal order. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5,

2025). If ICE chooses to re-detain a noncitizen after they have been released, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4 (l)(1); 8 C.F.R. § 241.13(i)(3). Thereafter, the noncitizen may "submit any evidence or information that [] she believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

Here, Respondents do not appear to suggest that Petitioner violated the terms of her supervised release [*see generally* Ret.], ruling out § 241.4(l)(1) or § 241.13(i)(1) as the source of her revocation. Rather they appear to rely on either § 241.4(l)(2) or § 241.13(i)(2). According to Respondents, ICE re-detained Petitioner "for purposes of executing her final removal order." Ret. at 3. Accordingly, § 241.4(l)(2) applies here. Respondents presumably decided to revoke Petitioner's release because it was "appropriate to enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii). However, ICE still failed to provide notice and informal interview before detaining Petitioner, thereby violating her due process rights.

The requirements for notice and an initial informal interview are not explicitly required in § 241.4(l)(2), but courts have held that the same requirements constrain revocation of release under this provision as well. *See Diaz*, 2025 WL 2581575, at *5 (citing various district court cases that have rejected the government's arguments that these provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) ("District courts have consistently . . . held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2)"; collecting cases). Here, Respondents concede ICE did not serve Petitioner a notice of revocation of release when ICE re-detained Petitioner on September 25, 2025. Ret. at 3. The fact that she was served a Form I-200, Warrant for Arrest of [Noncitizen] *after* her arrest is not sufficient to satisfy the requisite notice and process due to Petitioner. Courts have found similar documents

with more level of details to be insufficient to provide notice under the statute. *See, e.g., Sargsyan v. Noem*, No. 25-CV-3857 JLS (JLB), 2026 WL 92044, at *3 (S.D. Cal. Jan. 13, 2026) (finding a generic form revocation letter insufficient to provide notice); *Xayakesone v. Noem*, No. 25-CV-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official [noncitizen] file and a determination that there are changed circumstances in your case"); *Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the [noncitizen's] release"); *Nouri*, 2025 U.S. Dist. LEXIS 171809 at *14 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation.") (citation omitted). The Court finds that Respondents failed to provide Petitioner a written notice as required by 8 C.F.R. § 241.4 (l) and 8 C.F.R. § 241. 13.

Further, after re-detaining a noncitizen who is out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i)(3). Here, Respondents again concede that ICE did not conduct an initial informal interview at the time of re-detention. Ret. at 3. As other courts have found, ICE's failure to provide an informal interview after the revocation of release constitutes a due process violation. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (due process violation where "[n]othing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention."); *Ceesay*, 781 F. Supp. 3d at 164 ("ICE's failure to afford [petitioner] an interview violated his right to due process"); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (holding that informal interview was not sufficiently "prompt" where it took place twenty-seven days after revocation and collecting cases); Order Granting Habeas Corpus Petition,

*Sayvongsa v. Noem*, No.: 3:25-cv-02867-AGS-DEB (S.D. Cal. Oct. 31, 2025), ECF No. 10 (granting petition where petitioner did not receive an informal interview for twenty-one days after being re-detained). The Court finds that Respondents failed to provide Petitioner an informal interview as required by 8 C.F.R. § 241.4(l) and 8 C.F.R.§ 241.13(i).

Respondents argue that even assuming ICE violated agency regulations, Petitioner "has not established prejudice nor constitutional violation." Ret. at 10. "[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation, however, implicates due process concerns even without a prejudice inquiry. *Id*. (holding that where "the regulation violation … constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview … derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025). Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205.

Even if that were not the case, Petitioner suffered sufficient prejudice. In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of § 241.4 and § 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id*. Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL

2444087, at *6 (D. Md. Aug. 25, 2025). ICE deprived Petitioner of these due process protections when it failed to provide her with a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). Petitioner had a protected liberty interest in remaining out of custody, and thus, ICE was required to follow its regulations before re-detaining the Petitioner. "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

In sum, the Court finds that because ICE did not follow its own regulations when it re-detained Petitioner, these failures constitute a violation of Petitioner's due process rights and justifies her release from unlawful detention. *See, e.g.*, *Tran*, 2025 WL 3005347, at *3–4 (granting a habeas petition where ICE failed to follow § 241.13(i)(3) procedures); *Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111-JES-DEB, 2025 WL 2988356 (S.D. Cal. Oct. 23, 2025) (granting a habeas petition where ICE failed to follow § 241.4(l) procedures).

**2. Third Country Removal**

Petitioner argues that "ICE's current[] operative policies threaten her removal to a third country without adequate notice and an opportunity to be heard," in violation of the Fifth Amendment, the Convention Against Torture ("CAT"), and implementing regulations. Pet. at 10. Respondents respond that Petitioner's claim is moot because she

has received a written notice that ICE intends to remove Petitioner to Mexico. Ret. at 9; ECF No. 11-2 at 14. The Court disagrees.

"ICE may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion, nationality, membership in a particular social group, or political opinion." *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1007 (W.D. Wash. 2019) (citing 8 U.S.C. § 1231(b)(3)). "If the noncitizen expresses fear of persecution or harm upon return to any of the countries designated by the [Immigration Judge], the [Immigration Judge] must inform the noncitizen that he or she may apply for asylum, withholding of removal, or relief under the Convention Against Torture." *Id.* (citing 8 C.F.R. § 1240.11(c)(1)). "Failing to notify individuals who are subject to deportation that they have a right to apply for asylum … and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999)). "Both the due process clause and the governing statute place the burden on the government ... to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden*, 409 F. Supp. 3d at 1009).

Yet, on July 9, 2025, ICE issued a new guidance ("ICE Memo") indicating it may remove any immigrant to a third country "without the need for further procedures" as long as the United States has received "credible" "assurances" from that country that deportees will not be persecuted or tortured. ECF No. 1-2 at 7. The ICE Memo further specifies that ICE will not affirmatively ask whether a noncitizen is afraid of being removed to the country of removal. *Id.* "As several courts have held, the policies in the ICE Memo are 'contrary to Ninth Circuit precedent.'" *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025) (quoting *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025)) (collecting cases); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–28 (W.D. Wash. 2025); *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025);

*Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). This procedure does not inform an individual subject to removal of her right to apply for withholding of deportation or of the opportunity to present any fear of persecution or harm upon return to the designated country. As such, this new guidance, if implemented without further procedures, would violate the noncitizen's due process rights under *Andriasian*, 180 F.3d 1033. Accordingly, this Court joins others in finding that ICE's third-country removal policies—as stated in the ICE Memo—violate the constitutional right to due process.

Here, Respondents served a "Notice of Third Country Removal to Mexico" after Petitioner was re-detained. Ret. at 9; ECF No. 11-2 at 14. The Notice not only has incorrect spelling of Petitioner's name but also does not state whether Petitioner was informed about her rights to apply for withholding of deportation or of the opportunity to present any fear of persecution or harm in Mexico. Respondents do not state otherwise. Thus, Respondents must provide Petitioner with adequate notice and an opportunity to be heard before removing her to a third country.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] and **DENIES AS MOOT** the Motion for Temporary Restraining Order [ECF No. 9]. Respondents are **ORDERED** to immediately release Petitioner from custody subject only to the conditions of her preexisting Order of Supervision. Respondents are further **ORDERED** to provide notice and a meaningful opportunity to be heard and to apply for fear-based relief prior to removing Petitioner to a third country. As this concludes the litigation in this case, the Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated:  February 3, 2026

_____
Honorable Linda Lopez
United States District Judge